**In re EL ARK INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 89–11–119M.**

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Sept. 20, 1990.

Charles W. Baker, Little Rock, Ark.

Claude S. Hawkins, Jr., Asst. U.S. Atty., Fort Smith, Ark.

Peter R. Mounsey, U.S. Dept. of Justice, Washington, D.C.

Henry C. Morris, DeQueen, Ark., U.S. Trustee.

## ORDER

JAMES G. MIXON, Bankruptcy Judge.

On August 7, 1989, El Ark Industries, Inc., filed a voluntary petition for relief under the provisions of chapter 11 of the United States Bankruptcy Code. On August 10, 1989, on the debtor's motion, Henry Morris, Esq., was appointed trustee. On April 9, 1990, the debtor and the trustee filed a liquidating plan of reorganization. The United States of America, on behalf of its agency, the United States Environmental Protection Agency (EPA), filed an objection to the plan, and a confirmation hearing was conducted on May 24, 1990. The matter was taken under advisement.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and the Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The debtor is a corporation with assets consisting of a 34–acre tract of land, valued on the schedules at $156,000.00,[1] and personal property totaling $763.68. The petition lists two creditors holding priority claims: Union County, Arkansas, which holds a claim for real property taxes in the sum of $212.00, and EPA, which holds an unliquidated disputed claim in an unknown amount. The petition lists six creditors holding general unsecured claims totaling $111,372.97.

EPA has issued the debtor an administrative order alleging that the debtor's real property is polluted and that the debtor could be responsible for cleaning up the pollution. The alleged pollution resulted from operations conducted by a former owner of the property. As of the confirmation hearing, EPA had not rendered a final decision on the debtor's liability. EPA has not filed a claim in the debtor's chapter 11 case.

Class I under the debtor's plan consists of all administrative claims and does not include any claim of EPA. Class II consists of all claims of EPA. Class III consists of all unsecured claims, and Class IV consists of all claims of interests.

The plan proposes to pay Class I in full. Class III and Class IV are to receive nothing under the plan. Class II, EPA, is to receive, after payment of the administrative claims, all funds generated from an existing lease of the real property and all funds, if any, generated from the sale of the real property. Also, the shareholder interest in the debtor is to be transferred to EPA. The plan also provides the following:

1. Upon confirmation of this Plan, the Trustee shall continue to lease all or such portions of the Property as possible and at the same time shall try to sell the Property. EPA shall be obligated to provide any prospective purchaser with a covenant not to sue the prospective purchaser on account of any condition that exists on the Property at the time of the sale. EPA has a right to veto any sale by the Trustee. Trustee has a right to continue to lease the property until such time as the Trustee has sufficient funds to pay all Class I claims in full. EPA can agree to a sale of the Property at any time if EPA agrees to pay all Class I claims in full from the sale proceeds. If EPA refuses to allow the Trustee to sell the Property after the Trustee has sufficient funds to pay all Class I claims, the Trustee can deed the Property to EPA in full satisfaction of Class II claims and in such event the Trustee will be entitled to a Trustee's fee as if the Trustee had sold the Property and distributed the pro-

---

1. The schedules state that $156,000.00 is the book value of the property and that "[b]ecause of the possibility of an environmentally hazard-

ous condition on the land, [the property] may not have any value."

ceeds. If the Trustee has sufficient funds generated by leasing the Property to pay all Class I Claims, the EPA can demand that the Trustee deed the Property to EPA and if EPA makes such a demand, the Trustee's fee shall be determined as if the Property was sold by the Trustee and that the Trustee thereafter distributed the sale proceeds. If the Trustee has funds in excess of the funds necessary to pay Class I claims in full, the excess shall be paid to EPA.

2. The case shall be closed after the payment of all Class I claims and the Property is either sold to a purchaser or deeded to EPA.

EPA argues that the plan cannot require EPA to receive title to real estate over its objection.[2] The real estate proposed to be conveyed to EPA is land which may be polluted and which may constitute a liability rather than an asset. Mike Mahoney, a witness for the debtor, testified that, in his opinion, the land has no value other than a nominal monthly rental value. He testified that EPA has no security interest in the property and that no judgment has been entered against the debtor in EPA's favor. The debtor cites no authority that supports the contention that a creditor can be required to accept worthless real property in satisfaction of a potential post-petition unsecured claim.

EPA's objection to confirmation is sustained, and the debtor has twenty days to file a modified plan or the case will be dismissed.

IT IS SO ORDERED.

---

**2.** EPA also objected to the plan's requiring EPA to agree to a covenant not to sue a subsequent purchaser of the property. At the confirmation hearing, the debtor agreed to eliminate this provision.